**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| TAMMY M. STRAND-YARBRAY, Individually and as Administratrix of the Estate of LARRY YARBRAY, SR., LARRY YARBRAY, JR., individually, and MICAH YARBRAY, individually, | ) ) ) ) ) | C.A. No. N24C-08-067 FJJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | TRIAL BY JURY OF TWELVE DEMANDED |
| BIKE DELAWARE, INC. a Delaware Corporation, and JOSEPH YODER, a Delaware Individual, | ) ) ) | |
| Defendants. | ) ) | |

## *OPINION AND ORDER*

*Upon Consideration of Defendant, Bike Delaware Inc.'s
Motion to Dismiss*
**DENIED**

Submitted: November 26, 2024
Decided: December 2, 2024

Cynthia Pruitt, Esquire, of DOROSHOW, PASQUALE, KRAWITZ, & BHAYA, Wilmington, Delaware, Attorney for Plaintiffs Tammy M. Strand-Yarbray, Larry Yarbray, Jr., and Micah Yarbray.

Kenneth Doss, Esquire, and Daniella Spitelli-Sarnecky, Esquire, of CASARINO, CHRISTMAN, SHALK, RANSOM, & DOSS, P.A., Wilmington, Delaware, Attorneys for Defendant Bike Delaware, Inc.

Jeffrey A. Young, Esquire of YOUNG & MCNELIS, Dover, Delaware, Attorney for Defendant Joseph Yoder.

**JONES, J.**

## FACTUAL AND PROCEDURAL OVERVIEW

Larry Yarbray Sr. ("Yarbray") participated in the Amish Country Bike Tour on September 10, 2022.[1] During the race, Yarbray was struck head-on by a pick-up truck driven by Joseph Yoder ("Yoder").[2] Yarbray succumbed to his severe blunt force trauma injuries.[3] Tammy Stand-Yarbray, joined by her two children Larry Yarbray Jr. and Micah Yarbray, filed suit against Bike Delaware, Inc. ("Bike Delaware") and Yoder on August 8, 2024 asserting a survival claim and wrongful death claims.[4,5] The essence of the suit against Bike Delaware is that it was negligent in its organization and management of the Amish Country Bike Tour.[6] Plaintiffs argue that because of Bike Delaware's negligence, Yarbray, along with thousands of bicyclists, were caused to ride on a narrow roadway within inches of Defendant Yoder's pick-up truck.[7] They further allege the congestion of the roadway was a cause of Yarbray's accident. Bike Delaware has filed the instant Motion to Dismiss.[8] Bike Delaware maintains that Plaintiff's claims are barred, because (1) Decedent signed a waiver which waives any liability against Bike Delaware and (2) decedent assumed the risk of injury.[9]

---

[1] Docket Item ("D.I.") 1, ¶ 2.
[2] *Id.* ¶ 2.
[3] *Id.* ¶ 3.
[4] *Id.*
[5] *Id.* at ¶ 73-81.
[6] *Id.* at ¶ 52.
[7] *Id.* ¶ 45.
[8] D.I. 6.
[9] *Id.* ¶ 3.

## STANDARD OF REVIEW

When reviewing a Motion to Dismiss under Superior Court Rule 12(b)(6), the Court (1) accepts all well-plead factual allegations as true, (2) accepts even vague allegations as well-plead if they give the opposing party notice of the claim, (3) draws all reasonable inferences in favor of the non-moving party, and (4) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[10] "Dismissal is warranted where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[11]

## ANALYSIS

I.   The Signed Waiver Does Not Satisfy the Required Criteria Under Delaware Law, and Therefore Does Not Act as a Bar to Plaintiffs' Claims.

Delaware law allows a party to avoid liability for its own negligence if the release waiver is unambiguous, not unconscionable, and not against public policy.[12] If the waiver satisfies all three criteria, a negligence claim is barred by the signed release of liability.[13] Bike Delaware argues that the claim must be dismissed because Yarbray signed a waiver "specifically and explicitly agreeing to release and hold

---

[10] *ET Aggregator, LLC v. PFJE AssetCo Holdings LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).
[11] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Aug. 20, 2004).
[12] *Ketler v. PFPA, LLC*, 132 A.3d 746, 747 (Del. 2016).
[13] *Id.* at 747.

Bike Delaware harmless for any claims for damages."[14]  Bike Delaware argues that because all three elements have been met, the claim should be dismissed.  The Waiver signed by the Decedent provides:

> I hereby acknowledge that riding bicycles on public roadways on which moving vehicles are present in an inherently dangerous activity. I hereby, for myself, my heirs, executors and administrators, release and forever discharge, covenant not to sue and agree to indemnify, and save and hold harmless the Amish Bike Tour, Bike Delaware and its employees, contractors, board members, vendors and volunteers, the City of Dover, Kent County, and their members, agents, servants, representatives, sponsors, successors, and assignees and any other bodies, corporations, associations or persons from any claim for damages resulting in injury or illness to either myself, my family or to my equipment during the Amish Country Bike Tour, being held on September 9-11, 2022 …[15]

### A. Bike Delaware's Waiver is Not Unconscionable.

Bike Delaware claims that the waiver is not unconscionable.  This Court agrees.  When assessing whether a waiver is not unconscionable, the courts look to see if there is a deprivation of meaningful choice and if a party can "walk away" from the contract.[16]

In the case *Ketler v. PFPA*, this Court found that an unconscionable contract is one "no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other."[17]  In the instant case,

---

[14] D.I. 6, ¶ 5.
[15] D.I. 6, ¶ 3.
[16] *Ketler*, 132 A.3d at 748.
[17] *Id.*

Decedent was free to accept the terms of the waiver and choose to participate in the cycling event. There is no evidence that Yarbray lacked a meaningful choice when signing the waiver nor is there evidence that the terms unreasonably favor one party.[18] Therefore, this Court finds that the waiver satisfies the element of conscionability.

### B. Bike Delaware's Waiver is Not Against Public Policy.

Bike Delaware claims that the waiver is not against public policy. For a waiver to be enforceable, it must not be against public policy. The Delaware General Assembly determines the public policy of this State.[19] In *Mackenson v. Anthony*, this Court found that there is no applicable statute to the validity of a prospective release from ordinary negligence.[20] Therefore, waivers releasing a party from liability for their negligence is not against public policy. The waiver in the present case is not against public policy.

### C. Bike Delaware's Waiver Fails to Unambiguously Cover its Negligent Acts.

Delaware law is clear that for liability waivers to be valid the waiver must contain crystal clear and unequivocal language that the waiver covers the releasees negligent acts.[21] Delaware courts have found provisions to be "crystal clear" when the language "expressly releases the defendants from any liability for any injury

---

[18] *Slowe v. Pike Creek Ct. Club, Inc.*, 2008 WL 5115035 at *2 (Del. Super. Dec. 4, 2008).
[19] *Mackenson v. Anthony*, 2017 WL 2633492 at *3 (Del. Super. June 19, 2017).
[20] *Id.*
[21] *Slowe*, 2008 WL 5115035 at *2 (Del. Super. Dec. 4, 2008).

6

resulting from their own negligence."[22]  Bike Delaware claims that the waiver, signed by the Decedent, contained crystal clear and unequivocal language releasing Bike Delaware from the damages sought by the Plaintiffs as a result of Decedent's injuries.[23]  Defendant's liability waiver does not meet the required criteria.

In the case, *Slowe v. Pike Creek Court Club, Inc.*, this Court found that the waiver was not "crystal clear" in releasing PCCC from the negligence claim because the liability waiver was "devoid of any language indicating that the waiver would cover acts of negligence" committed by the defendant.[24]  *Slowe* highlights the importance of including language in a waiver that explicitly exonerates the party's liability from injuries caused by acts of their own negligence.

The court in *DeShaun Ketler and Brittany Ketler v. PFPA, LLC d/b/a Planet Fitness* further explains the importance of expressly releasing an injury resulting from the negligence of the defendant.[25]  In *Ketler*, the plaintiffs' claim was barred by the plaintiff's signed release of liability.[26]  The waiver expressly released Planet Fitness from any injury that resulted in negligence of Planet Fitness by stating:

> "…I understand and voluntarily accept this risk and agree that Planet Fitness ... will not be liable for any injury, including, without limitation, personal, bodily, or mental injury ... **resulting from the negligence** of Planet Fitness

[22] *Mackenson*, 2017 WL 2633492 at *2.
[23] D.I. 6, ¶ 5.
[24] *Slowe*, 2008 WL 5115035 at *3.
[25] *Ketler*, 132 A.3d at 747.
[26] *Id*.

7

or anyone on Planet Fitness' behalf whether related to exercise or not."[27]

The present case is similar to *Slowe* because the waiver does not speak to the defendant's own negligence. The provision is devoid of language exonerating Bike Delaware from injuries caused by its own negligence. Bike Delaware is not entitled to rely on it to avoid liability. Quite simply, the waiver releasing Bike Delaware from liability does not have the required language. Therefore, Bike Delaware's Motion to Dismiss on the basis of the waiver is **DENIED**[28]. (footnote Even if the written waiver was valid as to Yarbary it would have no impact as to the wrongful death claims because the wrongful death beneficiaries did not sign the waiver. See Skinner v Peninsula Healthcare Servs., LLC 2021 WL 778324 (Del. Super 2021).)

II. <u>Primary Assumption of Risk Is Not Applicable, and Therefore Does Not Act as a Bar to Plaintiffs' Negligence Claim.</u>

Under Delaware negligence law, primary assumption of risk is an affirmative defense that acts as a complete bar to a plaintiff's recovery when "plaintiff expressly consents to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone."[29] If a court finds primary assumption of the risk is applicable, "the defendant is relieved of legal duty to the plaintiff," and, thus, "[defendant] cannot be

---

[27] *Id.* (emphasis added).
[28] Even if the written waiver was valid as to Yarbary it would have no impact as to the wrongful death claims because the wrongful death beneficiaries did not sign the waiver. *See Skinner v Peninsula Healthcare Servs., LLC* 2021 WL 778324 (Del. Super 2021).
[29] *Barth v. Blue Diamond*, 2017 WL 5900949, at *2 (Del. Super. Nov. 29, 2017).

charged with negligence."[30]  Traditionally, Delaware case law has applied primary assumption of risk to "sports-related activities that 'involv[e] physical skill and challenges posing significant risk of injury to participants in such activities, and as to which the absence of such a defense would chill vigorous participation in the sporting activity and have deleterious effect on the nature of the sport as a whole."[31]

This Court in *Storm v. NSL Rockland Place, LLC* discusses two commonalities often appearing in situations where primary assumption of the risk is applicable.[32]  First, the plaintiff is choosing to participate in the activity as a personal desire.  Second, by participating in the "inherently risky activity," the plaintiff understands that other participants may not act with the ordinary care of a reasonably prudent person.[33]  For example, a contact-sport participant has no negligence claim when they are injured by a fellow participant's contact within the scope of the sport.[34]

Delaware courts have discussed two types of primary assumption of the risk: express primary assumption of the risk and implied primary assumption of the risk.[35]  Express primary assumption of the risk depends upon an express agreement where the plaintiff releases the offending party from responsibility.[36]  As discussed above

---

[31] *Id.* at 2. (quoting *Storm v. NSL Rockland Place, LLC*, 898 A.2d 874, 883 (Del. Super. Ct. Dec. 29, 2005).
[32] *Storm*, 898 A.2d at 883.
[33] *Id.*
[34] *Id.* at 883-84.
[35] *See Barth*, 2017 WL 5900949.
[36] *Id.* at *2.

9

Yarbray did not expressly release Delaware Bike from Delaware Bike's own negligent acts. Therefore, express primary assumption of the risk is not available to Delaware Bike in this case.[37]

In *Barth v. Blue Diamond*, which also involved a bike race where the defendant claimed that primary assumption of risk was applicable, this Court had an opportunity to lay out a framework for analyzing when implied primary assumption of the risk applies. In *Barth* the Court wrote:

> Case law suggests that courts should find an implied primary assumption of risk only with respect to certain activities. Delaware cases have noted that primary assumption of risk commonly applies to "sports-related activities that 'involv[e] physical skill and challenges posing significant risk of injury to participants in such activities, and as to which the absence of such a defense would chill vigorous participation in the sporting activity and have a deleterious effect on the nature of the sport as a whole.'" Examples of such sports-related activities include:
>
> (1) being a spectator at a sporting event such as a baseball or hockey game or tennis match where projectiles may be launched into the audience;
> (2) participating in a contact sporting event;
> (3) bungee jumping or bungee bouncing;
> (4) operating a jet-ski, or engaging in other noncompetitive water sports such as water-skiing, tubing, or white-water rafting;
> (5) drag racing; and
> (6) skydiving.
>
> The nature of the activity is pertinent to an analysis of primary assumption of risk. Otherwise, in the absence of a waiver of liability, the dangerousness of the activity would be irrelevant. The case law therefore suggests that the doctrine of primary assumption of risk applies to certain sports-related activities, even in the absence of an

---

[37] *Id.*

10

express waiver form. However, though Delaware seems to allow for the application of implied assumption of risk in certain sporting events, no Delaware case has provided a framework for applying the doctrine. This precise issue appears to be one of first impression.

The California case *Peart v. Ferro*, 119 Cal. App. 4th 60 13 Cal.Rptr.3d 885 (2004) A.M.C. 1388 (1st Dist. 2004)*,* which this Court cited in support of its observations on the prevalence of primary assumption of risk in dangerous sporting events, provides a means of analysis. Under the *Peart* framework, courts must examine two things to determine whether an implied primary assumption of risk exists: the nature of the activity and the relationship between the parties.

When examining the nature of the activity, courts consider:

What conditions, conduct or risks that might be viewed as dangerous in other contexts are so integral to or inherent in the activity itself that imposing a duty of care would either require that an essential aspect of the sport be abandoned, or else discourage vigorous participation therein. In such cases, defendants generally do not have a duty to protect a plaintiff from the inherent risks of the sport, or to eliminate all risk from the sport.

In examining the relationship of the parties, the court bears in mind that "the general duty of due care to avoid injury to others does not apply to coparticipants in sporting activities with respect to conditions and conduct that might otherwise be viewed as dangerous but upon examination are seen to be an integral part of the sport itself."

When analyzed within this framework, implied primary assumption of risk remains distinct from secondary assumption of risk. Secondary assumption of risk has been subsumed by Delaware's contributory negligence statute. It is therefore no longer available as a complete defense. Secondary assumption of risk exists when "the plaintiff's conduct in encountering a known risk may itself be unreasonable, because the danger is out of proportion to the advantage which he is seeking to obtain." In contrast, the focus for implied primary assumption of risk remains on the nature of the

activity the plaintiff has consented to participate in and the actions of the defendants—not how the conduct of the plaintiff may have contributed to his injuries. Commentators also have noted that implied primary assumption of risk is distinct from secondary assumption of risk.[38]

Applying this framework the *Barth* Court found that primary assumption of the risk did not apply because "though defendants do not owe a duty to protect a plaintiff from the risks inherent in an activity to which the doctrine of implied assumption of risk applies, "defendants do have a duty not to increase the risk of harm beyond what is inherent in the sport."

Application of the framework of *Barth* to the instant case leads this Court to conclude that the allegations against Bike Delaware do not involve risks inherent in the activity of the bike race but rather involve allegations that Bike Delaware increased the risk of harm beyond what is inherent in the sport.

The facts alleged in the pleadings suggest that decedent and other race participants were congested and biking on a "narrow roadway within inches" of the car that struck decedent.[39] The pleadings further allege that these conditions caused decedent to be hit.[40] The facts of this case align with *Barth*. When the facts are viewed in a light most favorable to the plaintiffs Decedent's risk did not stem from a hazard inherent to recreational bike riding; it was the route Bike Delaware created

---

[38] *Barth*, 2018 WL 273028, at *4-6.
[39] D.I. 1, at ¶ 45.
[40] *Id.* at ¶ 46.

for the ride. Bike Delaware is potentially negligent by creating a route with conditions outside of ordinary activities decedent assumed the risk of by participating in the event.

Based on the above reasons, Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

_/s/ Francis J. Jones, Jr._

Francis J. Jones, Jr., Judge

cc:    File&ServeXpress
Cynthia Pruitt, Esquire
Kenneth Doss, Esquire